SARAH TAYLOR *vs.* HUGH M. WHITNEY.

Argued by appellant, submitted on brief by respondent Jan. 25, 1894. Affirmed Feb. 1, 1894.

No. 8524.

**Laches a bar to relief in equity.**

Where a party has slept upon his claim or cause of action for a period of more than thirty-three years, without any reasonable explanation of the cause of delay, the claim should be deemed stale, and his laches constitute a bar to his maintaining an action thereon.

Appeal by plaintiff, Sarah Taylor, from a judgment of the District Court of Hennepin County, *Charles M. Pond*, J., entered September 25, 1893, dismissing the action on the merits.

On June 11, 1856, William Taylor owned block ten (10) and other adjacent blocks in Taylor & Co.'s Addition to Winona. On that day he and wife conveyed the property to Edwin Foster and took back from him a bond in the penal sum of $8,000 conditioned that if he reconveyed to Taylor on being paid $4,000 and interest on or before October 1, 1856, evidenced by Taylor's note for that sum, then the bond should be void. The deed and bond were duly recorded and on October 1, 1856, Taylor signed a certificate written on the margin of the record of the bond, stating that the conditions of the bond had been complied with. On July 27, 1857, Foster and wife conveyed block ten (10) to A. C. Smith. On June 15, 1864, Smith and wife sold and conveyed it to Timothy Kirk. On October 12, 1871, Kirk and wife sold and conveyed it to W. S. Grant. On March 4, 1874, Grant and wife sold and conveyed it to Herman E. Curtis, and on September 6, 1886, Curtis and wife sold and conveyed it to Franklin A. Rising.

On October 29, 1889, Taylor and wife, claiming that their deed to Foster and his bond back were in fact but a mortgage to him, asserted title to the block and conveyed it to A. H. Welch, and he and wife at the same time conveyed it back to Taylor's wife, the plaintiff. On May 1, 1893, she and her husband made an agreement with the defendant, Hugh M. Whitney, to convey six of the lots in the block to him on May 15, 1893, and he agreed to pay her

therefor $350 on that day. It was stipulated in the agreement that if he refused to take the title and pay the money, he should pay her $100 liquidated damages for nonperformance. She tendered a deed, but Whitney declined to accept it and refused to pay the purchase price, and she brought this action in Hennepin County the next day, to recover the $100 damages. He answered and on August 1, 1893, the parties amicably stipulated as to the facts, waived a jury and submitted the case for decision. The trial court found the facts upon this stipulation and as conclusion of law dismissed the action. Judgment was entered and plaintiff appeals.

*C. J. Cahaley,* for appellant.

The deed and note from Taylor to Foster, and the bond given back by Foster to Taylor, all dated February 11, 1856, being parts of the same transaction, in law constitute a mortgage, and not a conditional sale. *Hill* v. *Edwards,* 11 Minn. 22; *Holton* v. *Meighen,* 15 Minn. 69; *Weide* v. *Gehl,* 21 Minn. 449; *Benton* v. *Nicoll,* 24 Minn. 221; *Meighen* v. *King,* 31 Minn. 115; *Jones* v. *Blake,* 33 Minn. 362.

The premises are vacant and there can be no laches imputed to plaintiff or her grantors, short of the statutory period. Neither Taylor nor his grantees have done anything to influence the conduct of the adverse claimants, and their delay in bringing suit works no estoppel against them. *Ogden* v. *Ball,* 40 Minn. 94; *Mueller* v. *Fruen,* 36 Minn. 273; *Morris* v. *McClary,* 43 Minn. 346.

*James D. Shearer,* for respondent.

The deed from Taylor to Foster conveyed the legal title; and, Foster having conveyed to Smith, the present legal title is in his grantees claiming title under his deed by an unbroken chain. The dissenting opinion in the case of *Butman* v. *James,* 34 Minn. 552, fully expresses the position that respondent contends for.

We invoke the equitable principles of laches and stale claim in the belief that the court will see their applicability here and apply and adopt them in the circumstances of this case.

BUCK, J. There is so little merit in the plaintiff's claim herein that we shall not enter into a very extensive discussion of the

various questions discussed by counsel. In June, 1856, William Taylor, the husband of the plaintiff, owned the lots in question, situate in Taylor & Co.'s addition to the village of Winona, and they, as husband and wife, on the 11th day of June, 1856, by deed of warranty, conveyed the lots to one Edwin Foster. On the same day, Foster executed an instrument in writing to said William Taylor, which the plaintiff claims was a mortgage, and the defendant insists that it was a conditional sale of the same premises back to Taylor. Both instruments were at once duly recorded in the office of the register of deeds of Winona county. On October 1, 1856, William Taylor certified that all of the conditions of said instrument from Foster to Taylor had been complied with, which certificate was on the margin of the record of the instrument in the register of deeds' office of the said county of Winona. Nothing further appears to have been done by William Taylor or his wife in regard to the premises until October 29, 1889,—a period of more than thirty three years,—when they, by quitclaim deed, in form conveyed said premises to one A. H. Welch, who, together with his wife, on the same day, conveyed the premises back to this plaintiff, the wife of the said William Taylor, and they, on May 1, 1893, entered into a contract with defendant, whereby he promised to purchase said premises of plaintiff and her husband for the sum of $300, $50 of which was paid down, and the balance was to be paid May 15, 1893; and thereupon plaintiff and her husband were to execute and deliver to defendant a warranty deed of the premises, except as to taxes and tax titles. Plaintiff claimed to be ready at the time and place to perform her part of the contract, but that defendant refused to perform, and plaintiff brought suit upon a clause in the contract, which is as follows: "It is mutually agreed that if the party of the second part, on or before May 15, 1893, shall neglect to take said title, or pay said money, that then, and in that event, the parties of the first part shall have the option to either bring action for the specific performance of this agreement, or to maintain action thereon for damages; and to that end the parties mutually agree that the sum of one hundred dollars, in addition to the consideration this day paid, shall be, and hereby is, declared and fixed as the amount of said damages, and, by this agreement, shall be considered as liquidated damages."

The alleged ground of defendant's refusal to perform is that Edwin Foster, to whom plaintiff and her husband had conveyed the premises, by warranty deed, on June 11, 1856, had on July 27, 1857, conveyed the same premises to one Smith, by deed of warranty, and that from time to time, during a period of many years, running from 1857 to 1886, several different parties had purchased and conveyed the same premises, and recorded their instruments of conveyance in the office of the register of deeds of said county of Winona, the last deed thereof being to one Rising, in September, 1886.

It is not necessary for us to determine whether the instrument executed by Foster to Taylor was a mortgage or conditional sale of the premises. William Taylor, the husband of plaintiff, and from whom she derives title, has been guilty of great laches during one-third of a century, in remaining silent, and permitting others to acquire deeds to this property, from time to time, and, from the admitted facts, paying valuable consideration therefor; and the plaintiff is in no better condition and has no better rights than her husband had. His claim to the premises had become stale, and it does not seem to have become purified by its transfer to the plaintiff, nor by the manner in which the case comes before us now, and the court below very properly denied the plaintiff's claim to relief.

The land is situate in Winona county, where the suit ought to have been brought, but it was commenced and tried in Hennepin county, without objection, and the husband, after sleeping upon his rights for thirty three years, transfers the property to his wife, and then both enter into a peculiarly worded contract, and agree to perform its conditions within fifteen days. No attempt seems to have been made to bring in any of the other purchasers of the premises, and especially the last one, Rising, who has a deed thereof on record, dated in 1886. No attempt is made upon either side to adjust the equitable adverse rights of other claimants to the property. Neither is there any explanation of this long delay on the part of the Taylors to wake up, and prevent other purchasers from paying valuable considerations for the premises during a long period of years. The plaintiff and her husband have been guilty of such laches in regard to the premises for such a length of time that we

do not think that the ends of justice, in the strict doctrines of equity, require us to reverse the decision of the court below. In Wood on Limitations (volume 1, § 60) the rule laid down in regard to this class of cases is stated as follows: "Courts of equity have always discouraged stale demands by refusing to enforce them when the person setting them up has lost his moral, if not his legal, right to enforce them."

It is true the defendant does not claim under any of the grantees of Edwin Foster, but the parties hereto agree upon such a state of facts as to impute laches to plaintiff and her husband, under whom she claims title. These admitted facts would render the title to the premises doubtful and unmarketable, and make the contract sued upon nonenforceable. The doctrine of laches, and the refusal of courts to enforce stale demands, does not always depend upon the statute of limitations, but, in a great measure, upon the peculiar circumstances attending each case, and upon the nature of the claim, and whether the delay has been unreasonable.

In a case in the United States Supreme Court, Fuller J., says: "The doctrine of laches is based upon grounds of public policy, which require, for the peace of society, the discouragement of stale demands." *Mackall* v. *Casilear*, 137 U. S. 556 (11 Sup. Ct. 178.)

We concur in the decision of the court below, and the judgment appealed from is affirmed.

(Opinion published 57 N. W. Rep. 937.)